UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
MARCUS ANTHONY MICOLO,

                    Plaintiff,

        -against-                              MEMORANDUM & ORDER
                                               16-CV-5635(JS)(AKT)
DEPARTMENT OF JUSTICE,
                    Defendant.
--------------------------------------X
APPEARANCES
For Plaintiff:      Marcus Anthony Micolo, pro se
                    03A3985
                    Clinton Correctional Facility
                    P.O. Box 2001
                    Dannemora, NY 12929

For Defendant:      Megan Jeanette Freismuth, Esq.
                    U.S. Attorney's Office
                    610 Federal Plaza
                    Central Islip, NY 11722


SEYBERT, District Judge:

        Marcus  Anthony  Micolo  ("Plaintiff")  commenced  this

action  pursuant  to  the  Freedom  of  Information  Act  ("FOIA"),  5

U.S.C.  §  552  et  seq.,  against  Defendant  Department  of  Justice

("Defendant"  or  the  "Department")  on  October  3,  2016.[1]  (Compl.,

Docket Entry 1.)  Currently pending before the Court is Defendant's

---

[1] Initially, Plaintiff named Sean O'Neill, the Chief of the
Administrative Staff of the Department of Justice, Office of
Information Policy, as the only defendant.  Because the relevant
federal agency is the appropriate defendant in a FOIA action,
the Court dismissed the Complaint against O'Neill and directed
that the Department be substituted as the proper defendant.
(See Feb. 2017 Order, Docket Entry 12, at 2.)

motion for summary judgment.  (Def.'s Mot., Docket Entry 42.)  For
the reasons that follow, Defendant's motion is GRANTED.

BACKGROUND

I.  Factual Background[2]

In July 2003, Plaintiff was convicted of robbing
Greenpoint Savings Bank ("Greenpoint") in Rocky Point, New York on
November 6, 2001 (the "Robbery").  (Compl. at 1-2, ¶ 1.)  This
matter involves Plaintiff's attempts to obtain certain information
related to the Robbery investigation from the Department and the

---

[2] The following material facts are drawn from Defendant's Local
Civil Rule 56.1 Statement (Def.'s 56.1 Stmt., Docket Entry 44),
Plaintiff's Local Civil Rule 56.1 Response (Pl.'s 56.1 Resp.,
Docket Entry 36), and the exhibits referred to therein.  Any
relevant factual disputes are noted.  All internal quotation
marks and citations have been omitted.

Local Civil Rule 56.1 requires that the party opposing a motion
for summary judgment file a response which includes
"correspondingly numbered paragraphs responding to each numbered
paragraph in the statement of the moving party" and that each
statement be supported by a citation to admissible evidence.
Local Civil Rule 56.1(b), (d).  Further, statements by the
moving party "will be deemed admitted for purposes of the motion
unless specifically controverted by a correspondingly numbered
paragraph" in the opposing party's 56.1 response.  Local Civil
Rule 56.1(c).  Most of the paragraphs in Plaintiff's 56.1
Response do not correspond to the paragraphs in Defendant's 56.1
Statement.  Additionally, Plaintiff does not specifically
controvert many of the facts in Defendant's 56.1 Statement.
However, Plaintiff's Response does contain factual assertions,
arguments, and citations to evidence.  Therefore, the Court will
overlook these deficiencies and consider Plaintiff's 56.1
Response, but deem admitted any statements in Defendant's 56.1
Statement that are supported by evidence and not controverted by
other evidence in the record.  See Kennedy v. Arias, No. 12-CV-
4166, 2017 WL 2895901, at *4 (S.D.N.Y. July 5, 2017).

Federal Bureau of Investigation ("FBI"), including communications between local law enforcement and the FBI and photographs allegedly taken by cameras inside the bank.

Generally, Plaintiff questions the FBI's involvement in the Robbery investigation and alleges that while it is unclear who contacted the FBI, he believes the FBI was notified of the Robbery "pursuant to protocol."[3]  (Pl.'s 56.1 Resp. ¶¶ 4-5.)  Plaintiff maintains, without citing admissible evidence, that after the Robbery, "F&O Security Company . . . took two (2) rolls of .35mm film from the interior camera within the bank," which was "brought to the[ir] lab to be processed and developed."  (Pl.'s 56.1 Resp. ¶ 6 (second alteration in original).)  He refers to a receipt entered into evidence at his criminal trial, which he contends shows that the film was processed, developed, and mailed to Greenpoint.  (Pl.'s 56.1 Resp. ¶ 6.)  He states--again without citations to evidence--that "it is . . . believed that on or about the same date, . . . F&O Security Company sent identical pictures to the F.B.I. Regional Office in NYC and/or Melville."  (Pl.'s

---

[3] Attached to Plaintiff's Complaint is a letter to the Federal Deposit Insurance Commission ("FDIC") from the FBI dated June 19, 2003 stating that the FBI and Suffolk County Police Department "[were] conducting a joint investigation" in connection with the Robbery.  (June 19, 2003 Letter, Compl. Ex. 11, Docket Entry 1-3, at ECF p. 14-15.)  While Plaintiff did not submit the letter in opposition to the pending motion, given his pro se status, the Court will consider it as evidence that the FBI was involved in the investigation.

56.1 Resp. ¶ 6.)  He reiterates that he "believe[s] that the F.B.I.
did obtain the pictures from the alleged Nov. 6, 2001 [Greenpoint]
robbery."  (Pl.'s 56.1 Resp. ¶ 7.)

A.  FBI Records Systems

FBI records are stored in the Central Records System
("CRS"), which contains "applicant, investigative, intelligence,
personnel, administrative, and general files" maintained by the
FBI across all offices--FBI Headquarters, FBI Field Offices, and
FBI Legal Attaché Offices.  (Def.'s 56.1 Stmt. ¶ A.1.)  When a
case file is opened, it is assigned a Universal Case File Number
("UCFN"), and within each case file, documents are assigned a
document number--or "serialized"--when they are added to the case
file.  (Def.'s 56.1 Stmt. ¶¶ A.2-3.)  FBI records are also
contained in an "electronic, integrated case management system"
called Automated Case Support ("ACS"), which consists of
approximately 105 million CRS records.  (Def.'s 56.1 Stmt. ¶ A.7.)
The Universal Index ("UNI"), an automated index of the CRS,
provides FBI offices with a "centralized, electronic means of
indexing pertinent investigative information to FBI files for
future retrieval via index searching."  (Def.'s 56.1 Stmt. ¶ A.8.)
Conducting a search using the UNI could locate (1) paper and
electronic records from before 1995, which were imported from prior
systems, and (2) paper and electronic records from 1995 to present.
(Def.'s 56.1 Stmt. ¶ A.9.)  As of July 1, 2012, the FBI began using

Sentinel, a new case management system ("Sentinel"). (Def.'s 56.1 Stmt. ¶¶ A.10-11.) Records and information indexed into Sentinel are "replicated or backfilled into ACS," and "Sentinel provides another portal to locate information within the vast CRS for FBI records generated on or after July 1, 2012." (Def.'s 56.1 Stmt. ¶¶ A.12-13.)

B. Plaintiff's Requests

    1. First Request and July 2015 Release

In a letter to the FBI's New York Field Office dated January 19, 2015, Plaintiff requested: "any and all information in your mechanical and/or computer file records, including copies of photographs, with regard to the alleged robbery and investigation of the: Nov. 6, 2001 at approx. 1:50 p.m. alleged robbery of: Greenpoint Savings Bank, 75 Rt. 25A, Rocky Point, L.I.N.Y. (Suffolk County)" (the "First Request"). (Pl.'s 56.1 Resp. ¶ 1; Def.'s 56.1 Stmt. ¶ 1; First Request, Hardy Decl., Ex. A, Docket Entry 45-1, at ECF p. 2.) He specified that this request included "copies of receipts and records of notes of communications from any FBI Investigator to Suffolk County Robbery Squad Detectives and/or Prosecutors." (First Request at ECF p. 2-3.)

The FBI responded on February 4, 2015, acknowledging receipt of his request and requesting additional personal information because the request "did not contain sufficient information to conduct an accurate search" of the CRS. (Def.'s

56.1 Stmt. ¶ B.2; Identity Form, Hardy Decl., Ex. B, Docket Entry 45-2, at ECF p. 2.)  Additionally, the response indicated that Plaintiff should complete and return the Certification of Identity form to assist in the FBI's search efforts.  (Def.'s 56.1 Stmt. ¶ B.2.)

Plaintiff returned the Certification of Identity form with his signature, dated February 10, 2015, and an attached letter of the same date.  (Def.'s 56.1 Stmt. ¶ B.3; Identity Form and Letter, Hardy Decl., Ex. C, Docket Entry 45-3.)  While Plaintiff maintains that he "provided the U.S.D.O.J. with all the personal information it needed," most of the fields on the Certification of Identity form were left blank.  (Pl.'s 56.1 Resp. ¶ 3; Identity Form and Letter at ECF p. 2.)  The letter attached to the incomplete form (the "February 2015 Letter") stated that Plaintiff was writing to follow-up on his request and that the photographs he previously requested "were processed and developed by the F+O Security Company in NYC and may have been sent to the NYC FBI Field Office via UPS on 11/7-8/01."  (Def.'s 56.1 Stmt. ¶ B.4; Pl.'s 56.1 Resp. ¶ 8; Identity Form and Letter at ECF p. 4.)  The FBI responded by letter dated February 25, 2015 and indicated that Plaintiff's request was in process.  (Def.'s 56.1 Stmt. ¶ B.5; Feb. 2015 FBI Resp., Hardy Decl., Ex. D, Docket Entry 45-4, at ECF p. 2.)

Thereafter, the FBI searched for the requested records by conducting a CRS index search for "Green Point Savings Bank"

and "Green Point Bank" in records maintained at FBI Headquarters
and field offices. (Def.'s 56.1 Stmt. ¶¶ B.6-8.) However, no
records were located. (Def.'s 56.1 Stmt. ¶ B.9.) Next, the FBI
conducted CRS searches for a "three-way phonetic breakdown" of
"Marcus A. Micolo," and "on-the-nose search[s]" for "Marcus
Anthony Micolo," "Marcus A. Micola," "Christopher Webster," "James
Wendel," and "James Werdel,"[4] and located a set of potentially
responsive records--file number 91A-NY-281456, which was closed on
August 29, 2003. (Def.'s 56.1 Stmt. ¶¶ B.11-12.) As a result,
the request was treated as a Freedom of Information/Privacy Acts
("FOIPA") request regarding "Marcus A. Micolo." (Def.'s 56.1 Stmt.
¶ B.13.) The FBI obtained the paper file for 91A-NY-281456, which
consisted of ninety-two pages, and it released forty-one pages to
Plaintiff on July 30, 2015 (the "July 2015 Release").[5] (Def.'s

---

[4] These names appear to be Plaintiff's aliases. (See Hardy
Decl., Docket Entry 45, ¶ 51 ("The FBI used information in
Plaintiff's request letter to facilitate the identification of
responsive records by searching the requester's name and aliases
found during the search.").)

[5] On July 25, 2015--several days prior to the July 2015 Release--
Plaintiff sent a letter to the FBI "to narrow the search for
records sought." (Def.'s 56.1 Stmt. ¶ B.26; July 2015 Letter,
Hardy Decl., Ex. M, Docket Entry 45-13, at ECF p. 2.) He
explained that he was specifically interested in two things: (1)
whether photographs taken by F+O Security Company were sent to
the FBI's New York field office, and (2) whether the FBI was
contacted about the alleged robbery and if so, whether the FBI
worked with Suffolk County law enforcement during the
investigation. (July 2015 Letter at ECF p. 2.)

56.1 Stmt. ¶¶ B.15-16, B.20; July 2015 Release, Hardy Decl., Ex. H, Docket Entry 45-8.)  Eight pages were referred to the FDIC to determine whether release was appropriate, and forty-three pages were withheld.  (Def.'s 56.1 Stmt. ¶¶ B.16.)  Twelve of the forty-three pages were duplicates, and the remaining thirty-one pages were withheld because Plaintiff failed to complete the Certification of Identity Form.  (Def.'s 56.1 Stmt. ¶¶ B.17-18.) The FBI did not locate any photographs in file number 91A-NY-281456.  (Def.'s 56.1 Stmt. ¶ B.19.)

By letter dated August 7, 2015, Plaintiff filed an administrative appeal stating that the "photographs requested . . . weren't provided" and "asking that they [ ] be provided." (Def.'s 56.1 Stmt. ¶ B.22; Aug. 2017 Appeal, Hardy Decl., Ex. I, Docket Entry 45-9, at ECF p. 2-3.)  Additionally, Plaintiff pointed out that the July 2015 Release did not include documents or communications between Suffolk County law enforcement and the FBI.[6] (Aug. 2017 Appeal at ECF p. 3.)  Plaintiff sent a second letter regarding the appeal on August 10, 2015, indicating that he noticed another file number--188B-NY-266547--and believed the FBI should review that file for the photographs.  (Def.'s 56.1 Stmt. ¶ B.24; August 2017 Appeal Letter, Hardy Decl., Ex. J, Docket Entry 45-

_____

[6] Plaintiff continues to maintain that the July 2015 Release did not contain all of the relevant documents.  (See, e.g., Pl.'s 56.1 Resp. ¶ 15.)

10.)  On September 14, 2015, Plaintiff's appeal was denied and the FBI's action was affirmed.  (Def.'s 56.1 Stmt. ¶ B.25; Sept. 2015 Denial, Hardy Decl., Ex. L, Docket Entry 45-12.)

### 2.  Second Request

By letter dated August 7, 2015, Plaintiff sent a request to the FBI's Long Island office requesting "the .35mm photographs in this office's file in conjunction with the alleged robbery" and "copies of all correspondence done to [and] from this field office to the Suff. Co. robbery squad; the Suff. Co. Dist. Attorney's Office; the Green Point Savings Bank and the F+O Security Company between November 6, 2001 to February 28, 2002" (the "Second Request").  (Def.'s 56.1 Stmt. ¶ B.27; Second Request, Hardy Decl., Ex. N, Docket Entry 45-14, at ECF pp. 2-3.)  In the August 2015 Request, Plaintiff refers to an FD-430 form (the "FD-430 Form") that was provided to him in the July 2015 Release, which he asserts indicates that the "[Long Island] office is in possession of surveillance photos of fair quality."  (Second Request at ECF pp. 2-3.)  On this form, under "Surveillance Photos Available" the individual completing it marked "Yes," and under "Quality of Photos," the individual marked "Fair."  (FD-430 Form, Compl., Ex. 5-7, Docket Entry 1-3, at ECF p. 6.)  The FBI acknowledged receipt of that request on August 21, 2015 and indicated that a search was in process.  (Def.'s 56.1 Stmt. ¶ B.28; Aug. 2015 Resp., Hardy Decl., Ex. P, Docket Entry 45-16.)

To attempt to locate the requested records and photographs, the FBI re-reviewed the electronic scanned copy and the paper copy of file number 91A-NY-281456 in an FBI storage facility. (Def.'s 56.1 Stmt. ¶¶ B.30-31.) No photographs or additional responsive records were located. (Def.'s 56.1 Stmt. ¶¶ B.32, B.34.) The FBI maintains that, based on its review, there is no indication that the photographs would be located or stored in a different location. (Def.'s 56.1 Stmt. ¶ B.33.)

In letters dated September 15, 2015 and October 22, 2015, the FBI informed Plaintiff that it was unable to locate any responsive records or photographs. (Def.'s 56.1 Stmt. ¶ B.34; Sept. 2015 Resp., Hardy Decl., Ex. Q, Docket Entry 45-17; Oct. 2015 Resp., Hardy Decl., Ex. R, Docket Entry 45-18.) These letters also stated that "[t]he FD-430 indicated in your request indicates a submission must be uploaded within 15 workdays of the offense; it does not guarantee that photos were included within the file." (Sept. 2015 Resp. at ECF p. 2; Oct. 2015 Resp. at ECF p. 2.)

Plaintiff filed an appeal on December 4, 2015, and the appeal was denied on January 11, 2016. (Def.'s 56.1 Stmt. ¶¶ B.35-37; Dec. 2015 Appeal, Hardy Decl., Ex. S, Docket Entry 45-19; Jan. 2016 Denial, Hardy Decl., Ex. U, Docket Entry 45-21.) In the letter denying the appeal, the FBI informed Plaintiff that "it could locate no responsive records subject to the FOIA in its

files" and that the FBI "conducted an adequate, reasonable search for such records." (Jan. 2016 Denial at ECF p. 2.)

### 3. Third Request

In two separate letters dated August 10, 2015, Plaintiff submitted requests seeking photographs and documents contained in file "188B-NY-266547-A serial 1 through 188B-NY-266547-C-89" (together, the "Third Request").[7] (Def.'s 56.1 Stmt. ¶¶ B.38-39; Third Request, Hardy Decl., Ex. V, Docket Entry 45-22, at ECF p. 2; Third Request Letter, Hardy Decl., Ex. W, Docket Entry 45-23, at ECF p. 2.) While Plaintiff requested documents and photographs, the letters made clear that he was "particularly interested in copies of the photographs of the alleged Nov. 6, 2001 Greenpoint Savings Bank Robbery." (Third Request Letter at ECF p. 2.)

The FBI acknowledged receipt of the request by letter dated September 1, 2015. (Def.'s 56.1 Stmt. ¶ B.40; Sept. 2015 Acknowledgment, Hardy Decl., Ex. X, Docket Entry 45-24.) Because the Third Request referred to a specific file number, the FBI retrieved and reviewed the paper copy of the file; however, no responsive records were located. (Def.'s 56.1 Stmt. ¶¶ B.41-44.) Specifically, the file did not contain any documents or photographs related to the Robbery. (Def.'s 56.1 Stmt. ¶ B.44.) The FBI informed Plaintiff of the results of the search on April 4, 2016,

---

[7] Plaintiff noticed this file number on several documents in the July 2015 Release. (See Aug. 2017 Appeal Letter at ECF p. 2.)

advising him that the responsive records were previously released to him and that no further records were located. (Def.'s 56.1 Stmt. ¶ B.45; April 2016 Resp., Hardy Decl., Ex. AA, Docket Entry 45-27, at ECF p. 2.)

Plaintiff filed an appeal on May 4, 2016. (Def.'s 56.1 Stmt. ¶ B.46; May 2016 Appeal, Hardy Decl., Ex. BB, Docket Entry 45-28.) The appeal was subsequently closed after Plaintiff submitted an additional request related to file number 188B-NY-266547, discussed below. (Def.'s 56.1 Stmt. ¶ B.49; Closure Letter, Hardy Decl., Ex. DD, Docket Entry 45-30.)

### 4. Fourth Request

By letter dated April 8, 2016, Plaintiff requested seventy-four documents in file number 188B-NY-266547 that he maintained "were not in the 91B-NY-____ release" (the "Fourth Request"). (Def.'s 56.1 Stmt. ¶ B.50; Fourth Request, Hardy Decl., Ex. EE, Docket Entry 45-31, at ECF p. 2.) This request stated "[t]he evidence shows that the documents overlap in the 188B# and the 91B#. [i].e., document #15 in the 91B# is document #89 in the 188B#. Thus, if #1 of the 91B# corresponds to #75 in the 188B# . . . there are 74 documents in this request that I ask you [again] to release." (Fourth Request at ECF p. 3 (third alteration in original).)

The FBI acknowledged receipt of the request by letter dated May 2, 2016. (Def.'s 56.1 Stmt. ¶ B.51; May 2016 Resp.,

Hardy Decl., Ex. FF, Docket Entry 45-32.)  Because the FBI had searched "the entirety of the 188B-NY-266547 file" in connection with Plaintiff's Third Request, it concluded that no additional searching was necessary.  (Def.'s 56.1 Stmt. ¶¶ B.52-54.)  In a letter dated June 7, 2016, the FBI advised Plaintiff that the records were released to him in July 2015 and that no additional action would be taken.  (Def.'s 56.1 Stmt. ¶ B.55; June 2016 Resp., Hardy Decl., Ex. GG, Docket Entry 45-33, at ECF p. 2.)

Plaintiff filed an appeal on July 1, 2016 which was denied by letter dated September 16, 2016.  (Def.'s 56.1 Stmt. ¶¶ B.56, 58; July 2016 Appeal, Hardy Decl., Ex. HH, Docket Entry 45-34; Sept. 2016 Denial, Hardy Decl., Ex. KK, Docket Entry 45-37.)  The FBI advised Plaintiff that in addition to the fact that the responsive records were already provided, the FBI conducted another search of file number 188B-NY-266547 upon receipt of the Fourth Request and did not locate any responsive records.  (Sept. 2016 Denial.)

5. <u>June 2017 Release</u>

After Plaintiff commenced this action, the FBI conducted an additional search of the 188B-NY-266547 file.  (Def.'s 56.1 Stmt. ¶ B.59.)  A search of the electronic version of the file yielded no responsive records; however, when the FBI searched in its Sentinel system, potentially responsive records were located. (Def.'s 56.1 Stmt. ¶¶ B.60-61.)  It appears that Sentinel contained

additional records that were not present in the file, and because the FBI began using Sentinel in 2012 and the records requested were from 2001, the FBI had not searched Sentinel when processing Plaintiff's requests. (Def.'s 56.1 Stmt. ¶¶ B.62, B.64.) As a result, the FBI reviewed the contents of the 188B-NY-266547 file in the Sentinel system and identified five pages of victim notification documents that were responsive to Plaintiff's requests. (Def.'s 56.1 Stmt. ¶¶ B.65-68.) No photographs were located. (Def.'s 56.1 Stmt. ¶ B.67.)

Additionally, the FBI reviewed the processing of Plaintiff's requests related to file number 91A-NY-281456--specifically, the thirty-one pages previously withheld because Plaintiff failed to complete the Certification of Identification Form. (Def.'s 56.1 Stmt. ¶¶ B.17-18, B.69, B.71.) The FBI determined that Plaintiff's Complaint in this action was sufficient to establish his identity, and as a result, released those pages and the five pages from file number 188B-NY-266547 discussed above on June 6, 2017 (the "June 2017 Release"). (Def.'s 56.1 Stmt. ¶¶ B.68, B.70, B.72; June 2017 Release, Hardy Decl., Ex. LL, Docket Entry 45-38.)

II.  Procedural Background

As discussed, Plaintiff commenced this action on October 3, 2016. Plaintiff challenges the following actions: (1) the withholding of forty-three documents, including twelve

14

duplicates, from the July 2015 Release of records in file number 91A-NY-281456 ("Count One"); (2) the FBI's failure to locate at least seventy-four documents in file number 188B-NY-266547 that were the subject of his Fourth Request ("Count Two"); (3) the withholding of "at least one document within the FBI case File" related to the Robbery "which was wrongfully withheld from the plaintiff" ("Count Three"); and (4) the FBI's failure to locate the photographs of the Robbery ("Count Four"). (Compl. at 11.) Defendant filed its Answer on May 24, 2017. (Answer, Docket Entry 21.)

On November 17, 2017, Defendant filed its motion for summary judgment. (See Def.'s Mot.) Plaintiff filed his opposition on November 29, 2017. (Pl.'s Opp., Docket Entry 47.) Defendant did not file a reply brief. (See Letter, Docket Entry 48.)

DISCUSSION

I.   Legal Standard

Summary judgment will be granted where the movant demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine factual issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed 2d 202 (1986). In

determining whether an award of summary judgment is appropriate, the Court considers the "pleadings, deposition testimony, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).

The movant bears the burden of establishing that there are no genuine issues of material fact. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). Once the movant makes such a showing, the non-movant must proffer specific facts demonstrating "a genuine issue for trial." Giglio v. Buonnadonna Shoprite LLC, No. 06-CV-5191, 2009 WL 3150431, at *4 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks and citation omitted). Conclusory allegations or denials will not defeat summary judgment. Id. However, in reviewing the summary judgment record, "'the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc., No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)). Additionally, on a motion for summary judgment, the Court must liberally construe a pro se litigant's complaint and "read a pro se litigant's supporting papers liberally, interpreting them to raise the strongest arguments that they suggest." Adeyi v. U.S., No. 06-

CV-3842, 2010 WL 520544, at *3 (E.D.N.Y. Feb. 8, 2010) (internal quotation marks and citation omitted).

II. FOIA

FOIA's purpose is to "'ensure an informed citizenry . . . [which is] needed to check against corruption and to hold the governors accountable to the governed." Dennis v. Alcohol, Tobacco, Firearms and Explosives, Nos. 12-CV-3795, 12-CV-4560, 2013 WL 6579581, at *3 (E.D.N.Y. Dec. 13, 2013) (quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242, 98 S. Ct. 2311, 2327, 57 L. Ed. 2d 159 (1978)) (alterations in original). FOIA provides that "'any member of the public is entitled to have access to any record maintained by a federal agency, unless that record is exempt from disclosure under one of the Act's nine exemptions.'" Roman v. C.I.A., No. 11-CV-5944, 2013 WL 210224, at *3 (E.D.N.Y. Jan. 18, 2013) (quoting A. Michael's Piano, Inc. v. FTC, 18 F.3d 138, 143 (2d Cir. 1994)). While FOIA empowers district courts to enjoin an agency from improperly withholding agency records and to order the production of agency records, "'jurisdiction is dependent on a showing that an agency has (1) improperly (2) withheld (3) agency records.'" Id. (quoting U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142, 109 S. Ct. 2841, 2846, 106 L. Ed. 2d 112 (1989)); see also 5 U.S.C. § 552(a)(4)(B).

When a plaintiff maintains that an agency "improperly withheld documents through its failure to locate them, the agency's burden is to establish that it conducted an adequate search that failed to produce the requested records." Taggart v. Office of the Inspector General, No. 10-CV-5447, 2011 WL 13128214, at *8 (S.D.N.Y. Sept. 22, 2011), aff'd, 530 F. App'x 17 (2d Cir. 2013) (internal quotation marks omitted). A search is adequate when it is "'designed to identify and locate responsive documents.'" Wen Dong Zhao v. U.S. Dep't of State, --- F. Supp. 3d ----, 2018 WL 3546177, at *3 (E.D.N.Y. July 23, 2018), appeal filed, No. 18-2541 (quoting Davis v. U.S. Dep't of Homeland Sec., No. 11-CV-203, 2013 WL 3288418, at *6 (E.D.N.Y. June 27, 2013)). Additionally, the agency's search is not required to be perfect, nor is it necessary for the agency to take extraordinary measures to locate responsive records; it is sufficient that the search was reasonable. See id.; Taggart, 2011 WL 13128214, at *8.

When the agency moves for summary judgment, it has the burden of demonstrating that it complied with FOIA and that the search was reasonable and adequate. Labella v. F.B.I., No. 11-CV-0023, 2012 WL 948567, at *6 (E.D.N.Y. Mar. 19, 2012). The agency can sustain its burden by submitting "'[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search.'" Taggart, 2011 WL 13128214, at *9 (quoting Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d

Cir. 1994)). The affidavits or declarations must describe in "reasonable detail the scope and method by which the search was conducted," Labella, 2012 WL 948567, at *7 (internal quotation marks and citation omitted), and should be "detailed, nonconclusory and submitted in good faith," Taggart, 2011 WL 13128214, at *9 (internal quotation marks omitted). Agency affidavits in FOIA actions are "presumed to be submitted in good faith." Zhao, 2018 WL 3546177, at *3.

If the agency satisfies its burden, "the plaintiff may avoid summary judgment . . . if he 'make[s] a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations or provide[s] some tangible evidence that . . . summary judgment is inappropriate.'" Labella, 2012 WL 948567, at *7 (quoting Carney, 19 F.3d at 812). The presumption of good faith by the agency "'cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'" Dennis, 2013 WL 6579581, at *4 (quoting Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999)); see also Zhao, 2018 WL 3546177, at *3 ("Bare allegations and speculation of bad faith cannot rebut the good faith presumption.") (citation omitted).

III.  Count One

In Count One, Plaintiff contends that the FBI wrongfully withheld forty-three documents--including twelve duplicates--from

the July 2015 Release. (Compl. at 11.) However, the thirty-one unique documents previously withheld were released to him in June 2017 after the FBI determined that his Complaint in this action established his identity. (See Def.'s 56.1 Stmt. ¶¶ B.68, B.70, B.72; June 2017 Release at ECF p. 2.) In other words, Plaintiff has received all of the documents previously withheld from the July 2015 Release. Accordingly, Count One of the Complaint is DISMISSED. See Flores v. U.S. Dep't of Justice, No. 15-CV-2627, 2016 WL 7856423, at *10 (E.D.N.Y. Oct. 4, 2016), R&R adopted, 2017 WL 238425 (E.D.N.Y. Jan. 18, 2017), aff'd, 712 F. App'x 107 (2d Cir. Feb. 28, 2018).

IV. Counts Two, Three, and Four

Counts Two, Three, and Four concern the FBI's failure to locate seventy-four documents allegedly contained in file number 188B-NY-266547, unspecified documents in the original FBI file, and the photographs of the Robbery. (Compl. at 11.) Defendant argues that Plaintiff's claims should be dismissed because (1) the searches conducted were adequate and reasonable, and (2) Plaintiff has not submitted sufficient evidence to rebut the presumption of good faith.[8] (Def.'s Br. at 7-11.)

---

[8] The Court does not agree with Defendant's argument that the entire action should be dismissed for lack of subject matter jurisdiction. (See Def.'s Br., Docket Entry 43, at 6-7.) For example, in Lane v. Department of Justice, No. 02-CV-6555, 2006 WL 1455459, at *7-9 (E.D.N.Y. May 22, 2006), the court dismissed several of the plaintiff's claims for lack of subject matter

In support of its motion, Defendant submitted the declaration of David M. Hardy ("Hardy"), the Section Chief of the Record/Information Dissemination Section, Records Management Division, of the FBI (the "Hardy Declaration"). (Hardy Decl. ¶ 1.) As Section Chief, Mr. Hardy manages the employees responsible for processing and responding to FOIA requests for FBI records and is familiar with Plaintiff's FOIA requests, the searches performed, and the agency's responses. (Hardy Decl. ¶¶ 2-3.) The Hardy Declaration describes the FBI databases and records systems that were searched, (Hardy Decl. ¶¶ 42-48), and the specific steps taken by the FBI in response to each of Plaintiff's requests, (Hardy Decl. ¶¶ 51-60). Specifically, for each request, the declaration outlines the electronic database(s) and/or paper files searched, the search types and terms, and the reasons for each of the steps taken by the bureau. (Hardy Decl. ¶¶ 51-60.) The Hardy Declaration also details the additional searches conducted after the commencement of this action and explains how and why an

---

jurisdiction based on the plaintiff's failure to make proper requests or exhaust administrative remedies. Here, there is no dispute that Plaintiff made several proper FOIA requests and pursued appeals before filing this action. Additionally, in Haji v. Bureau of Alcohol, Tobacco, Firearms and Explosives, No. 03-CV-8479, 2004 WL 1783625, at *2-3 (S.D.N.Y. Aug. 10, 2004), the court dismissed a FOIA action on mootness grounds after the FBI submitted a declaration indicating that any responsive records were destroyed in the attacks on September 11, 2001. In this case, the FBI is not arguing that the records sought have been destroyed, but rather, that it conducted reasonable searches and released all responsive records to Plaintiff.

additional five documents were located at that time. (Hardy Decl. ¶¶ 61-63.)

Plaintiff contends that the Hardy Declaration is a "second-hand-type of thing that is questionable" because "[Hardy] wasn't present when the files [related to the Robbery] were compiled." (Pl.'s 56.1 Resp. ¶ 13.) Further, Plaintiff points out that Defendant has not submitted a declaration from any of the agents who were involved in the Robbery investigation. (Pl.'s 56.1 Resp. ¶¶ 13, 15.) However, an agency's burden on summary judgment is to demonstrate, through affidavits or declarations detailing its efforts, that it conducted an adequate search for the requested records. See Taggart, 2011 WL 13128214, at *8-9, Labella, 2007 WL 948567, at *7. Accordingly, Defendant is not required to submit affidavits or declarations from the agents who participated in the investigation or from agents who were present when the file was compiled.

Based on the facts contained in the Hardy Declaration, the Court finds that the searches were adequate and reasonable and that Defendant has sustained its burden to show that it complied with FOIA. In light of this finding, Plaintiff must show evidence of bad faith in order to prevent summary judgment in Defendant's favor. See Labella, 2012 WL 948567, at *7. Plaintiff argues that

the FBI exhibited bad faith in several ways.[9]

First, Plaintiff maintains that the FBI acted in bad faith because after he commenced this action, the FBI conducted additional searches and located additional records. (Pl.'s 56.1 Resp. ¶ 14.) The Court disagrees. The release of additional documents after the filing of a FOIA action demonstrates the agency's continued good faith efforts to locate responsive documents and "suggest[s] a stronger, rather than weaker, basis for accepting the integrity of the search." Conti v. U.S. Dep't of Homeland Sec., No. 12-CV-5827, 2014 WL 1274517, at *15 (S.D.N.Y. Mar. 24, 2014) (internal quotation marks omitted); see also Flores, 2016 WL 7856423, at *9. Moreover, the fact that the initial searches did not locate these documents does not support a finding of bad faith, as the FBI is not required to locate every responsive document in order for the search to be reasonable. See Conti, 2014 WL 1274517, at * 15 ("[M]any courts have rejected the argument that the discovery of additional documents or later discovery of missing files renders a search unreasonable or conducted in bad faith."); Taggart, 2011 WL 13128214, at *8 ("[A] reviewing court must consider 'whether the search was reasonably calculated to

_____

[9] The Court finds Plaintiff's contention that Defendant acted in bad faith by "construing [his] requests as they wanted while nit-picking about other things (i.e., [him] spelling Green Point vs. GreenPoint, etc.)" to be unconvincing. (Pl.'s 56.1 Resp. at 8.)

discover the requested documents, not whether it actually uncovered every document extant.'") (quoting Grand Cent. P'Ship, 166 F.3d at 489).

Second, Plaintiff contends that the FD-430 Form, which was released to him in July 2015, "clearly shows that the FBI had surveillance [p]hotos of [f]air [q]uality available to them." (Pl.'s Opp. ¶ 8.) As discussed, the individual completing the FD-430 Form--which appears to have been completed in the course of the Robbery investigation--marked "Yes," under "Surveillance Photos Available" and marked "Fair" under "Quality of Photos." (FD-430 Form at ECF p. 6.) Plaintiff reasons that "the FBI would not discard the pictures that were available to them and these photos are somewhere in the FBI's files." (Pl.'s Opp. at 4, ¶ 11.) In a response to one of Plaintiff's requests, Defendant advised him that the FD-430 Form "indicates a submission must be uploaded within 15 workdays of the offense; it does not guarantee that photos were included within the file." (Sept. 2015 Response at ECF p. 2; Oct. 2015 Resp. at ECF p. 2.) The Court finds that the information noted on the FD-430 Form is insufficient to establish bad faith. The fact that photographs were "available" does not demonstrate that the photographs were in the FBI's possession at that time or when Plaintiff made his first request in January 2015.

Third, Plaintiff emphasizes that he believes that the FBI is in possession of the photographs but is concealing them.

(Pl.'s Opp. ¶¶ 15, 17; Pl.'s 56.1 Resp. ¶ 12.) For example, he cites discrepancies between the 91A-NY-281456 and 188B-NY-266547-A files as "sufficient reason to believe that the U.S.D.O.J. is concealing the pictures to aid someone." (Pl.'s 56.1 Resp. ¶ 11.) However, "[t]he presumption of good faith cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." Taggart, 2011 WL 13128214, at *9 (internal quotation marks and citations omitted); see also Conti, 2014 WL 1274517, at *11 ("Speculation that other documents exist, without more, does not undermine the finding that the agency conducted a reasonable search.") (internal quotation marks and citation omitted). Thus, these allegations are insufficient to prevent summary judgment in Defendant's favor.

For the reasons discussed above, the Court finds that Defendant is entitled to summary judgment on Counts Two, Three, and Four of the Complaint. Defendant has demonstrated that it conducted reasonable and adequate searches in response to Plaintiff's FOIA requests, and Plaintiff has failed to present sufficient evidence to rebut the presumption of good faith.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Docket Entry 42) is GRANTED, and Plaintiff's Complaint is DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to enter judgment accordingly and mark the case CLOSED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Plaintiff.


SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.


Dated:     September __27__, 2018
           Central Islip, New York